**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIK PRIME, Individually and on behalf of and all others similarly situated, <br><br>         Plaintiff, <br><br>         v. <br><br> DEXCOM, INC., KEVIN R. SAYER, JACOB S. LEACH, and JEREME M. SYLVAIN, <br><br>         Defendants. | Case No. 1:25-cv-08912-KPF <br><br> <u>CLASS ACTION</u> |
| OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM and OAKLAND COUNTY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, individually and on behalf of all others similarly situated, <br><br>         Plaintiff, <br><br>         v. <br><br> DEXCOM, INC., KEVIN R. SAYER, JACOB S. LEACH, JEREME M. SYLVAIN, and SEAN CHRISTENSEN <br><br>         Defendants. | Case No. 1:25-cv-09370-KPF <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**UNION ASSET MANAGEMENT HOLDING AG FOR APPOINTMENT AS LEAD**
**PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND**
**<u>CONSOLIDATION OF RELATED ACTIONS</u>**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 4

ARGUMENT .................................................................................................................... 5

A.      Union Is The Most Adequate Plaintiff And Should Be Appointed As Lead Plaintiff ........ 5

    1.      Union's Motion Is Timely ........................................................................5

    2.      Union Has The Largest Financial Interest In The Relief Sought By The Class ..................................................................................................7

    3.      Union Otherwise Satisfies The Requirements Of Rule 23 ...................7

B.      The Court Should Approve Union's Selection Of Lead Counsel ..................................... 11

C.      The Related Actions Should Be Consolidated ................................................................. 13

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ...............................14

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) ...............11

*Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*,
2022 WL 1515451 (S.D.N.Y. May 13, 2022) ...............10

*Chilton v. Chiumento Grp.*,
365 F. App'x 298 (2d Cir. 2010) ...............5

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ...............9

*Hom v. Vale, S.A.*,
2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ...............7, 8

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ...............13

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...............12

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
2009 WL 1458234 (D. Minn. May 26, 2009)...............10

*In re Nike, Inc. Sec. Litig.*,
2024 WL 4579499 (D. Or. Oct. 25, 2024)...............11

*Steiner v. UiPath, Inc.*,
2024 WL 4054373 (S.D.N.Y. Sept. 5, 2024)...............11

*Villella v. Chemical & Mining Co. of Chile Inc.*,
2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015)...............2

*In re Vivendi Universal, S.A. Sec. Litig.*,
605 F. Supp. 2d 570 (S.D.N.Y. 2009)...............10

*Weston v. DocuSign, Inc.*,
2022 WL 1301770 (N.D. Cal. Apr. 18, 2022) ...............11

STATUTES

15 U.S.C. § 78u-4 *et seq.* ................................................................................. *passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 23(a)(4)....................................................................................................8

Fed. R. Civ. P. 42(a) .......................................................................................................13

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .............................2, 9

Union Asset Management Holding AG ("Union") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (i) appointing Union as Lead Plaintiff; (ii) approving Union's selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the proposed Class; (iii) consolidating the above-captioned, related securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (iv) granting any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

On November 10, 2025, Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association ("Oakland County"), through its counsel Bernstein Litowitz, filed one of two Related Actions alleging that Dexcom, Inc. ("Dexcom") and certain of its current senior executives (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Specifically, the Related Actions allege that between January 8, 2024 and September 17, 2025, inclusive (the "Class Period"), Defendants made material misrepresentations to investors concerning the reliability and performance of Dexcom's flagship G7 device.[1] Dexcom investors, including Union, incurred

---

[1] The Related Actions assert slightly different class periods. The complaint in *Prime v. DexCom, Inc.*, No. 1:25-cv-08912-KPF (S.D.N.Y. filed Oct. 27, 2025) ("*Prime*") asserts a class period of July 26, 2024 to September 17, 2025, inclusive (*see* ECF No. 1), while the complaint in *Oakland County Employees' Retirement System v. DexCom, Inc.*, No. 1:25-cv-09370-KPF (S.D.N.Y. filed Nov. 10, 2025) ("*Oakland*") asserts a class period of January 8, 2024, to September 17, 2025, inclusive (*see Oakland*, ECF No. 1). Another substantially similar securities class action was also filed in the United States District Court for the Southern District of California ("Southern District

significant losses after it was revealed that the G7 was plagued with undisclosed quality issues arising, in part, from unapproved changes to the device, which led to patient harm and even death.

The PSLRA instructs this Court to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a presumption that the "most adequate plaintiff" is the movant that has the "largest financial interest" in the relief sought by the Class in this litigation and that also makes a *prima facie* showing that it meets the typicality and adequacy requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Union is the "most adequate plaintiff" by virtue of, among other things, the over $333.5 million in losses, as calculated on a last-in, first-out ("LIFO") basis, that it incurred on its purchases of Dexcom securities during the Class Period—a substantial financial interest that will ensure the vigorous prosecution of investors' claims.[2]

In addition to asserting a substantial financial interest, Union satisfies the relevant requirements of Rule 23 because its claims are typical of those of all members of the Class, and it will fairly and adequately represent the interests of the Class. Indeed, as a highly sophisticated institutional investor that manages over 525 billion euros in assets, Union is the prototypical investor envisioned by Congress to serve as lead plaintiff under the PSLRA, and its appointment would therefore fulfill this critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at *34

---

of California"). *See Boston Retirement System v. Dexcom, Inc.*, No. 3:25-cv-03284 (S.D. Cal. filed Nov. 25, 2025) ("*Boston*"). Like the complaint in *Oakland*, the complaint in *Boston* also asserts a class period of January 8, 2024, to September 17, 2025, inclusive. *See Boston*, ECF No. 1. For purposes of appointing a lead plaintiff, the longest alleged class period typically governs. *See Villella v. Chemical & Mining Co. of Chile Inc.*, 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015). Accordingly, for purposes of this motion, Union has relied upon the Class Period and allegations asserted in *Oakland*. Union is concurrently filing a substantially similar motion in *Boston* to preserve its interests.

[2] Union's PSLRA-required Certification is attached as Exhibit A to the Declaration of Gerald H. Silk (the "Silk Decl.") submitted herewith. In addition, a chart providing calculations of Union's losses is provided as Exhibit B to the Silk Decl.

(1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Further, Union fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action. Union's familiarity with the PSLRA is informed by its years of experience serving as a lead plaintiff in numerous securities class actions, through which it has achieved combined recoveries of approximately $1.75 billion on behalf of investors. Union also benefits from the resources and dedicated personnel of an in-house legal staff that ensures close oversight of outside counsel retained by Union to handle securities class action litigation. As Lead Plaintiff in this action, Union will bring those resources and experiences to bear on behalf of the Class. As such, Union possesses the capability, resources, and experience to oversee this litigation and guarantee the vigorous prosecution of the claims against Defendants.

Union has further demonstrated its adequacy by selecting Bernstein Litowitz to serve as Lead Counsel for the Class. Bernstein Litowitz is a nationally recognized securities litigation firm that has recovered more than $40 billion for defrauded investors and is eminently qualified to prosecute this case.

Based on Union's significant financial interest in the relief sought by the Class in this litigation, and its ability to oversee counsel, Union respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

**FACTUAL BACKGROUND[3]**

Based in San Diego, California, Dexcom is a medical device company that develops, manufactures, and markets continuous glucose monitors ("CGMs").  In early 2023, Dexcom launched the latest generation of its CGM, which it called the G7.

Throughout the Class Period, Defendants repeatedly praised the accuracy and overall performance of the G7, touting it as "the most accurate sensor on the market today," and "the most accurate CGM that has been cleared by the FDA."  Defendants expressly attributed the Company's success to the device's performance, claiming that "[y]ou can't achieve results like this, though, without having a great platform, and that's what our G7 is."  The complaint alleges that, in truth, Dexcom had made unauthorized material design changes to its CGMs, which rendered them less reliable and presented a material health risk to users.  The complaint further alleges that these reliability issues negatively impacted Dexcom's G7 sales.  As a result of Defendants' misrepresentations, Dexcom securities traded at artificially inflated prices during the Class Period.

The truth began to emerge on July 25, 2024, when Dexcom reported its second quarter results for fiscal year 2024.  The Company reported revenue for the quarter below consensus expectations and lowered its revenue guidance for the full year by approximately $300 million.  Dexcom attributed these results to problems relating to the sales of its CGM products, including the G7.  As a result of these disclosures, the price of Dexcom common stock declined by $43.85 per share, or 40.7%.

Then, on March 7, 2025, Dexcom revealed that it had received a warning letter from the FDA "describ[ing] observed non-conformities in manufacturing processes and quality

---

[3] The facts are recited from the complaint filed in *Oakland*.  *See Oakland*, ECF No. 1.

management system."  The letter also warned Dexcom that the Company was selling devices that were "adulterated" because it had modified G6 and G7 sensors by replacing a "component used in the resistance layer of [the] sensors," without FDA approval.  As a result of these disclosures, the price of Dexcom common stock declined by $7.12 per share, or 9.1%.

On September 18, 2025, research firm Hunterbrook Media LLC published a report entitled "Dexcom's Fatal Flaws."  The report detailed incidents of G7 users being hospitalized or dying as a result of incorrect blood glucose readings from their G7 devices.  This report included information from former Dexcom employees, healthcare experts, and G7 users, as well as documents from the FDA investigation that had prompted the March 2025 warning letter.  As a result of these disclosures, the price of Dexcom common stock declined by $8.99 per share, or 11.8%, over the following two trading sessions.

## ARGUMENT

### A.    Union Is The Most Adequate Plaintiff And Should Be Appointed As Lead Plaintiff

Union respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for lead plaintiff presumption).  As set forth below, Union believes it is the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1.    Union's Motion Is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has

been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On October 27, 2025, Erik Prime filed the first of the Related Actions against Dexcom and certain of its senior executives. *See* ECF No. 1. The same day, counsel for Mr. Prime published a notice on *ACCESS Newswire* alerting investors to the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is December 26, 2025. *See* ECF No. 8-1. On November 4, 2025, this Court issued an order acknowledging that Mr. Prime's counsel had published the required notice on October 27, 2025, and reiterating that members of the purported class had until December 26, 2025, to move for Lead Plaintiff. *See* ECF No. 9.

Then, on November 10, 2025, Oakland County through its counsel, Bernstein Litowitz, filed the second of the Related Actions, *Oakland*, asserting allegations substantially similar to those in *Prime*, over a longer class period. *See Oakland*, ECF No. 1. That same day, Bernstein Litowitz published a notice on *Business Wire*, alerting investors to the pendency of that action and the expanded Class Period, and reiterating the December 26, 2025 deadline to seek appointment as Lead Plaintiff. *See* Silk Decl., Ex. C. In addition, on November 25, 2025, Boston Retirement System filed a substantially similar action in the Southern District of California. *See Boston*, ECF No. 1. Counsel for Boston Retirement System published a notice on *Business Wire* alerting investors to the complaint and reiterating the December 26, 2025, Lead Plaintiff deadline. *See* Silk Decl., Ex. D.

The filing of *Oakland* and *Boston* did not disturb the previously noticed deadline to seek appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published."). Accordingly, Union's motion is timely.

2.      **Union Has The Largest Financial Interest In The Relief Sought By The Class**

Union should be appointed Lead Plaintiff because it has the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Union suffered losses of over $333.5 million, as calculated on a LIFO basis, on its Class Period purchases of Dexcom securities.  *See* Silk Decl., Exs. A-B.  To the best of Union's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, Union has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff."   15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I).

3.      **Union Otherwise Satisfies The Requirements Of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met." *Hom v. Vale, S.A.*, 2016 WL 880201, at \*6 (S.D.N.Y. Mar. 7, 2016) (citation omitted).  Union satisfies the typicality and adequacy requirements.

Union's claims are typical of the claims of other Class members.  Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Id.* (citation omitted).  Here, Union and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical.  Like all other Class members, Union (1) purchased Dexcom securities during the Class Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was harmed when the truth was revealed. *See id.* (typicality satisfied where movant purchased "shares at

artificially inflated prices during the class period, and were injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws"). Accordingly, Union satisfies Rule 23's typicality requirement.

Union also satisfies the adequacy requirement of Rule 23.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order for the Class's interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Vale*, 2016 WL 880201, at *6 (citation omitted).  Union's substantial financial stake in the litigation provides it with the incentive to vigorously represent the Class's claims.  Union's interests are aligned with those of the other Class members and are not antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between Union and other members of the Class.

Union has extensive experience serving as a lead plaintiff in securities class actions and supervising the work of outside counsel, including proposed Lead Counsel, Bernstein Litowitz. Union has repeatedly demonstrated its ability to serve as an effective advocate on behalf of investors by successfully prosecuting numerous securities class actions which have resulted in combined recoveries of approximately $1.75 billion for investors.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479 (N.D. Cal.) (recovering $480 million with Bernstein Litowitz as lead counsel); *In re Kraft Heinz Sec. Litig.*, No. 19-cv-1339 (N.D. Ill.) (recovering $450 million with Bernstein Litowitz as co-lead counsel); *In re Equifax Inc. Sec. Litig.*, No. 17-cv-3463 (N.D. Ga.) (recovering $149 million with Bernstein Litowitz as lead counsel); *In re Allergan Generic Drug*

*Pricing Sec. Litig.*, No. 16-cv-9449 (D.N.J.) (recovering $130 million with Bernstein Litowitz as co-lead counsel); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-cv-6509 (D.N.J.) (recovering $95 million with Bernstein Litowitz as lead counsel); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-cv-6324 (D. Minn.) (recovering $85 million with Bernstein Litowitz as co-lead counsel); *Hill v. State Street Corp.*, No. 09-cv-12146 (D. Mass.) (recovering $60 million with Bernstein Litowitz as co-lead counsel); *In re Boston Sci. Corp. Sec. Litig.*, No. 20-cv-12225 (D. Mass.) (recovering $38.5 million with Bernstein Litowitz as lead counsel); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-4844 (N.D. Cal.) (recovering $17.5 million with Bernstein Litowitz as lead counsel).  Based on that prior experience, Union fully understands the Lead Plaintiff's obligations under the PSLRA to oversee and supervise the litigation, and has submitted a sworn Certification attesting to its willingness, commitment, and ability to fulfill those duties in this action.  *See* Silk Decl., Ex. A.

In addition to possessing the largest financial interest and satisfying the requirements of Rule 23, Union—a sophisticated institutional investor that manages assets of over 525 billion euros—is exactly the type of investor Congress sought to empower, through the enactment of the PSLRA, to lead securities class actions.  Indeed, many courts have recognized a strong preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See, e.g.*, *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting that "the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [securities class] actions") (citation omitted).  Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because such investors are more apt to effectively manage complex securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995

U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Union is well suited to fulfill this Congressional intent. Moreover, Union has a dedicated staff of professionals, including in-house legal staff, who will ensure the effective oversight of counsel and this litigation. These personnel are highly experienced in conducting and supervising complex litigation and have repeatedly demonstrated their ability to oversee counsel and successfully prosecute securities class actions under the PSLRA.

Further, Union has standing to assert these claims. Union is an institutional asset manager, which manages investment assets through separate funds and is authorized to bring legal action on their behalf. Union purchased Dexcom securities during the Class Period through several investment funds established under either German or Luxembourgian law, which are managed by three Union subsidiaries. While the investment funds are considered separate estates, they are not independent legal entities and do not have legal capacity to sue in, or be brought before, courts of law. Instead, the Union subsidiaries that manage those investment funds are vested with authority to sue in their own name for damages suffered by those funds that they manage. Prior to seeking appointment as Lead Plaintiff, Union obtained valid assignments of the funds' claims from the Union subsidiaries that manage those funds. *See* Silk Decl., Ex. E (Declarations of Assignment); *see also Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 2009 WL 1458234, at *2 (D. Minn. May 26, 2009) (appointing Union as lead plaintiff and noting that it had standing because it "received effective assignments of claims"); *Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022) (appointing a German asset manager as lead plaintiff after finding it qualifies for the "prudential exception" and has standing to assert claims on behalf of its fund); *In re Vivendi*

*Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 578 (S.D.N.Y. 2009) (same); *Weston v. DocuSign, Inc.*, 2022 WL 1301770, at *5 (N.D. Cal. Apr. 18, 2022) (appointing a Luxembourgian asset manager as lead plaintiff where the asset manager had the exclusive authority to bring the claims and whose "funds have no legal authority . . . to pursue such claims on their own"); *In re Nike, Inc. Sec. Litig.*, 2024 WL 4579499, at *7 (D. Or. Oct. 25, 2024) (appointing a German asset manager as lead plaintiff where the asset manager demonstrated "(1) a close relationship to the injured part[ies]" and "(2) a barrier to the injured part[ies'] ability to assert [their] own interests") (alterations in original); *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *4 (N.D. Ohio Nov. 28, 2017) (appointing a German asset manager as lead plaintiff after finding it has standing because it "falls within the prudential exception to constitutional standing and may bring these claims on behalf of its funds" and, alternatively, because it also obtained valid assignments of claims).

Union has further demonstrated its adequacy through its selection of Bernstein Litowitz as Lead Counsel to represent the Class in this action. As discussed below, Bernstein Litowitz is highly qualified and experienced in securities class action litigation and has repeatedly demonstrated its ability to conduct complex securities class action litigation effectively. Accordingly, Union satisfies Rule 23's adequacy requirement.

**B.    The Court Should Approve Union's Selection Of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts generally defer to the appointed lead plaintiff's choice of counsel. *See Steiner v. UiPath, Inc.*, 2024 WL 4054373, at *4 (S.D.N.Y. Sept. 5, 2024) ("There is a strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection.") (citation omitted). The Lead Plaintiff's choice

11

of counsel should not be disturbed unless necessary to "protect the interests of the class." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015).

Union has selected Bernstein Litowitz to serve as Lead Counsel for the Class. As detailed in its firm résumé, Bernstein Litowitz is among the preeminent securities class action law firms in the country and has extensive experience serving as lead counsel in securities class actions, including in this District. *See* Silk Decl., Ex. F (Bernstein Litowitz's Firm Résumé). For example, Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which recoveries totaling in excess of $6 billion—one of the largest recoveries in securities class action history and the largest in this District—were obtained for the class. Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery); *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659 (S.D.N.Y.) ($1.07 billion recovery); *In re Wells Fargo & Co. Securities Litigation*, No. 20-cv-4494 (S.D.N.Y.) ($1 billion recovery); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery); *In re Wachovia Corp. Securities Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery); and *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-cv-411 (S.D.N.Y.) ($33 million recovery). In addition, before this Court, Bernstein Litowitz prosecuted claims on behalf of institutional investors that suffered losses in connection with investments in the Allianz Structured Alpha Funds due to Allianz's breaches of fiduciary and contractual duties, and recovered over $2 billion for investors through a series of negotiated settlements. *See, e.g.*, *Arkansas Teacher Retirement System v. Allianz Global Investors U.S. LLC*, No. 1:20-cv-05615 (S.D.N.Y.) (Failla, J.); *The Employes Retirement System of the City of Milwaukee v. Allianz Global*

12

*Investors U.S. LLC*, No. 1:20-cv-08642 (S.D.N.Y.) (Failla, J.); *Chicago & Vicinity Laborers District Council Pension Fund and Chicago & Vicinity Laborers District Council Health & Welfare Fund et al v. Allianz SE*, No. 1:20-cv-09478 (S.D.N.Y.) (Failla, J.); *The Boards of Trustees for the Carpenters Health and Security Trust of Western Washington and for the Group Investment Trust of the Carpenters Individual Account Pension Trust of Western Washington and Carpenters Retirement Trust of Western Washington v. Allianz SE*, No. 1:20-cv-09479 (S.D.N.Y.) (Failla, J.); *Christian Brothers Employee Retirement Plan v. Allianz Global Investors U.S. LLC*, No. 1:21-cv-07388 (S.D.N.Y.) (Failla, J.).

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Union's selection of Bernstein Litowitz as Lead Counsel for the Class.

## C.     The Related Actions Should Be Consolidated

Union respectfully requests that the two Related Actions pending in this District against Dexcom be consolidated pursuant to Rule 42(a).

| Case | Civil No. | Date Filed |
|---|---|---|
| *Prime v. DexCom, Inc.* | 1:25-cv-08912 | October 27, 2025 |
| *Oakland County Employees' Retirement System v. DexCom, Inc.* | 1:25-cv-09370 | November 10, 2025 |

Under Rule 42(a), consolidation of actions before the court is appropriate where the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *Kaplan v. Gelfond*, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) (consolidating related actions because the actions present "overlapping questions of law and fact"). The Related Actions present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, against overlapping defendants, relating to similar periods of time, and are premised on the same or similar

categories of misstatements.  While each of the Related Actions asserts claims against different, but overlapping, groups of Dexcom executives during a different class period, these minor differences do not render consolidation inappropriate because such minor differences in the pleadings do not outweigh the interests of judicial economy served by consolidation.  *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) ("[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation") (citation omitted).  Accordingly, Union respectfully requests that the Related Actions be consolidated.

## CONCLUSION

For the reasons discussed above, Union respectfully requests that the Court: (i) appoint it to serve as Lead Plaintiff; (ii) approve its selection of Bernstein Litowitz to serve as Lead Counsel for the Class; (iii) consolidate the Related Actions; and (iv) grant any such further relief as the Court may deem just and proper.

Dated: December 26, 2025                      Respectfully submitted,

                                              **BERNSTEIN LITOWITZ BERGER**
                                                **& GROSSMANN LLP**

                                              */s/ Gerald H. Silk*
                                              Gerald H. Silk
                                              Scott R. Foglietta
                                              1251 Avenue of the Americas
                                              New York, NY 10020
                                              Telephone: (212) 554-1400
                                              Facsimile: (212) 554-1444
                                              jerry@blbglaw.com
                                              scott.foglietta@blbglaw.com

                                              *Counsel for Proposed Lead Plaintiff Union*
                                              *Asset Management Holding AG and Proposed*
                                              *Lead Counsel for the Class*

14

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Union Asset Management Holding AG, certifies that this memorandum of law contains 4,297 words and is in compliance with the word-count limitation of Local Civil Rule 7.1(c).

Dated: December 26, 2025

/s/ Gerald H. Silk
Gerald H. Silk
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com

15